## BELL et al. v. DITMORE et al.
### No. 7622.

Court of Civil Appeals of Texas. Austin.
April 8, 1931.

Appellant's and Appellee's Motion Overruled
May 6, 1931.

Hamner & Ponder, of Sweetwater, for appellants.

J. W. Stovall and Chas. Gibbs, both of San Angelo, for appellees.

BLAIR, J.

This appeal is from an order overruling a motion to dissolve a temporary injunction, and involves, primarily, the construction of article 2922a, R. S. 1925, as amended in 1927 (Acts 1927, 1st Called Sess., c. 78, § 1 [Vernon's Ann. Civ. St. art. 2922a]), and article 2922c, R. S. 1925, to determine whether a county school board may create a rural high school district comprising an area of more than 100 square miles, except (a) upon approval of the board of trustees of each district affected; and (b) upon a majority of the qualified voters of the proposed district approving same at an election called for that purpose.

Article 2922a, R. S. 1925, in part reads: "Provided, also, that the county board may annex one or more common school districts to a common school district having four hundred or more scholastic population or to an independent district having one hundred and fifty or more scholastic population upon the approval of the board of trustees of the common school district having four hundred or more scholastic population, or of the independent district having one hundred and fifty or more scholastic population, as the case may be."

As amended by House Bill 89, Acts 1927, this article in part now reads: "* * * Provided also that the county school trustees may annex one or more common school districts or one or more independent school districts having less than two hundred and fifty scholastic population to a common school district having four hundred or more scholastic population or to an independent district having two hundred and fifty or more scholastic population upon the approval of the board of trustees of each school district affected."

Article 2922c reads: "No rural high school district, as provided for herein, shall contain a greater area than one hundred square miles, or more than seven elementary school districts, except that the county school board of school trustees may form rural high school districts, as provided in Article 2922a, containing more than one hundred square miles, upon a vote of a majority of the qualified electors in the said proposed rural high school district voting at an election called for such purpose; and provided further, that the said board of county school trustees may form a rural high school district containing more than seven elementary districts upon a vote of a majority of the qualified voters in each of the elementary districts within such proposed rural high school district."

■ Appellants' contention is not sustained that article 2922c, which requires that proposed rural high school districts comprising an area of more than 100 square miles shall be determined by a majority of the qualified voters of such proposed districts, furnishes an additional or independent method of creating rural high school districts from that prescribed by article 2922a, as amended in 1927, which requires that proposed rural high school districts comprising an area of less than 100 square miles shall be created only upon the "approval of the board of trustees of each school district affected," for two reasons, as follows:

First, the act of 1927, amending article 2922a, R. S. 1925, reveals the legislative intent to prohibit any grouping of school districts to form a rural high school by the county school board, except upon the approval of the board of each district affected, because prior to its amendment in 1927, that article merely required the county school board to obtain the consent or approval of the larger common or independent district to which one or more smaller districts were annexed in order to form a rural high school district. This procedure was manifestly unfair, because the smaller districts had no voice in the matter, and was evidently the reason for the amendment.

Second, the language of article 2922c is prohibitive in its nature, and was intended to impose limitations upon the authority given the county school board and the board of trustees of each school district affected, with respect to creating rural high school districts comprising an area of more than 100 square miles except upon a majority vote of the qualified voters approving same; that is, the manner of creating rural high school districts as provided for in article 2922a, as amended in 1927, should be followed in each instance, but that, where the proposed district comprised an area of more than 100 square miles, the creating authorities should also have the approval of a majority of the qualified voters of the proposed districts at an election called for that purpose. The language, "no rural high school district, as provided for herein, shall contain a greater area than one hundred square miles," refers to districts created under article 2922a, is prohibitive in its nature, and was intended to limit the authority of the county school board and the board of trustees of each district affected to that extent. Likewise was the power given these boards to create rural high school districts limited by the further language of article 2922c, "except that the county school board of school trustees may form rural high school districts, as provided in Article 2922a," containing a "greater area than one hundred square miles, * * * upon a vote of a majority of the qualified electors." In fact, the entire language of article 2922c is prohibitive in its nature and was only intended as a limitation upon the authority given by article 2922a to create rural high school districts in the manner there prescribed, and was not intended as an additional method for forming such districts. To construe article 2922c otherwise than as merely imposing limitations would be to deprive the smaller districts of a pro-

posed grouping of the only protection they have, namely, the approval of the grouping by the board of trustees of each district affected; because in many instances as was the case here, the larger district decides the question by virtue of having the most votes.

■■ Appellants suggest that, as a matter involving who shall pay the costs thereby incurred, we should determine whether the trial court erred in refusing to sustain its motion to dismiss the county commissioners of Coke county as parties defendant to this suit. They were made parties defendant upon the allegation that as the commissioners' court of Coke county they canvassed the returns of the election for the proposed district, declared the election carried by a majority, and certified the results to the county school board. These are the only duties devolving upon a commissioners' court in elections of this character, and the injunction should not have issued against these defendants restraining them from doing something which the petition alleges and the agreed facts show they had done prior to the filing of this suit. An injunction will not issue to enjoin an act already done. Ben C. Jones v. Philquist (Tex. Civ. App.) 249 S. W. 516.

■■ Appellants also insist that the trial court erred in refusing to sustain their plea to the jurisdiction for want of necessary parties to this suit.

The contention of appellants is that the county school board of Coke county, Tex., is a body politic and a legal entity by virtue of article 2683, that it was not sued as such, but only the individuals who composed it were sued; and that this court should take notice of the absence of such necessary parties. This contention is sustained. The identical question was passed upon and decided favorably to the contention of appellants in the case of Butman v. Jones (Tex. Civ. App.) 24 S.W.(2d) 796, where it was held that, in suits involving the validity of grouping common school district with an independent district to form a high school under article 2922a, the corporate county school board as well as the corporate board of each district affected should be sued as such, and that an appellate court would take notice of want of necessary parties at any stage of the proceedings. We therefore reverse the judgment of the trial court and remand the cause to afford appellees an opportunity to make necessary parties, failing which the suit should be dismissed.

Reversed and remanded, with instructions.