LUKE COUNTZ ET AL. v. BETTIE MITCHELL ET AL.

No. 5676. Decided May 16, 1931.
(38 S. W., 2d Series, 770.)

J. S. *Bracewell,* for appellants.

The consent of the school trustees of each district affected is a condition precedent to the authority of the county board to effect an annexation of two districts under the Rural High School Act and this is true notwithstanding an election may have been carried in the district at large. Article 2922A, Revised Civil Statutes of 1925, as amended by the Acts of the 40th Legislature, First Called Session, page 206, and the articles following; W. B. Hale v. Wm. McMurry, 22 S. W. (2d) 499; County Board of Limestone County v. Wilson, 5 S. W. (2d) 805; County Board of Trustees v. Wilson, 15 S. W. (2d) 144; Terrell v. Clifton, 15 S. W. (2d) 508; Independent School District v. Low, 10 S. W. (2d) 743; County Board of Angelina County v. Homer Common School District, 291 S. W., 268.

Since the Rural High School Act places rural school districts and the formation thereof under the control of the county board of education, where an election is called for annexing common school districts, the same must be called by the county board of education and an order of an election called by the county judge is void.

The school authorities in this case apparently assumed that the county judge had authority to call the same by virtue of the consolidation statute which is article 2806 of the Revised Civil Statutes. In all other authorized school elections for consolidation or dissolution the county judge is expressly authorized to call the election. We do not believe that it may be inferred from that that he is authorized to call an election for annexation under the Rurual High School Act. Under article 2947

he is directed to order "all other elections which under the law the *county judge may be authorized to order.*" There is no inherent power in the county judge to order an election and we believe that upon a consideration of the Rural High School Act as a whole such election must be called by the county board of education. Article 2922A of the Revised Civil Statutes and following; Article 2947 of the Revised Civil Statutes; Williams v. Glover, 259 S. W., 957; Trustees v. Elbon, 223 S. W., 1039; Stevens v. Dodd, 243 S. W., 711.

If the county judge has the authority to call an election under the Rural High School Act, the time of such notice is not provided by law and the general statute requiring thirty days notice of all special elections would control and less than thirty days notice having been given and it not being shown that a majority of the voters participated in such election, the same is void. Articles 2947 and 2950 of the Revised Civil Statutes of 1925; Cochran v. Kennon (this court), 161 S. W., 67; Swenson v. McLaren, 21 S. W., 302; Norman v. Thompson, 72 S. W., 64.

*M. E. Gates* and *Dean & Humphrey,* for appellees.

Where an election is held for the purpose of creating a rural high school district containing more than one hundred (100) square miles, by the annexation of one or more common school districts or one or more independent districts having less than two hundred fifty (250) scholastic population to an independent district having two hundred fifty (250) or more scholastic population, under and by virtue of article 2922c of the Revised Civil Statutes of 1925, it is not necessary to have the consent of the board of trustees of any of the districts so sought to be annexed by such election.

Under article 2922a, as amended by the Fortieth Legislature, it becomes necessary for the county board of trustees to secure the consent of the trustees of the common school districts affected by any system of grouping provided therefor and likewise for the annexation of any districts provided therefor.

On the other hand, article 2922c takes away from the county board of trustees the authority to organize a rural high school district containing more than one hundred (100) square miles, either by grouping or by annexation, except upon a vote of a majority of the electors residing in the territory to be affected, and providing further that, should the board desire to create a rural high school district by grouping or by annexation of territory containing more than one hundred (100) square miles and containing more than seven (7) elementary school districts, then it may be done only by a majority vote of the electors in each district to be affected thereby.

Since the rural high school law, and particularly article 2922c, does not expressly name the officer whose duty it becomes to issue an election

order thereunder, it becomes immaterial whether such election be ordered by the county board of trustees or by the county judge, and an election ordered by the latter official will be upheld.

. It is conceded that article 2922c provides for an election for the creation of a rural high school district by grouping or by annexation, where the territory involved exceeds one hundred (100) square miles, but the statute does not indicate who shall order the election. The following statutes are then cited and discussed: Rev. Civil Stats., arts. 2947, 2949, 2950, 2676, 2725, 2746, 2757, 2758, 2759, 2769, 2775, 2776, 2785, 2788, 2794, 2799, 2806; Williams v. Glover, 259 S. W., 947; Lewis v. Stanton Ind. School District, 294 S. W., 863; Buchanan v. Graham, 81 S. W., 1237; Santa Fe v. Blum Ind. School District, 143 S. W., 353.

We have given the above and foregoing excerpts from the various and sundry laws relating to elections and school districts in order that the court may have before it, in a rather emphasized form, the fact that the Legislature, in enacting such laws, has made no effort at uniformity in the matter of ordering elections and providing for notices thereof, and the fact that so many statutes relating to elections are silent with reference to the order for such elections and the notices to be given thereof would justify the court in taking judicial notice of the fact that the Legislature never intended that the election order and the notice of election and the observance of the requirements of the statute with reference thereto should in any manner or under any circumstances affect the validity of an election otherwise held in accordance with law or in such manner that the will of the voters could be ascertained from the result. Especially so in every case where the election was authorized and voters had a right to pass upon the question submitted. We refer the court to the very early case of McKinney v. O'Connor, 26 Texas, 11.

Appellants say in their brief that, since the law conferred upon the county board of school trustees the control and management of the public free schools of the county, the order for the election for annexation in the instant case should have been made by said board of trustees. There is nothing in the law to indicate that the Legislature intended that the county board should order elections instead of the county judge. Notwithstanding the statute in so many places requires the latter office to call elections, we submit that the county board, in this instance, did not so construe the law, but passed a resolution that an election for annexation should be held, and called upon the county judge to order the election and give notice thereof, etc. If, by any construction, the law contemplated that the county board should order the election, then we say that the spirit and intent of the law has been fully met in this case.

We respectfully submit, in all confidence and justice, that the appel-

lants' prayer for a temporary injunction be in all things denied, and that the election proceedings attacked herein be upheld.

MR. JUSTICE LEDDY delivered the opinion of the court.

The Court of Civil Appeals for the First Supreme Judicial District presents the following certificate and questions:

"This appeal, which is now pending in this court on motion for rehearing, is from an order of the court below denying a temporary injunction in a suit for injunction brought by appellants against appellees.

"The suit is brought by the trustees of Common School District No. 2 of Walker County against the County Superintendent of Schools, the County Board of Education, and the County Commissioners Court, to restrain any declaration of the result of an election held in several school districts of the county adjoining the Huntsville Independent School District to determine the question of the annexation of the adjoining districts to the Huntsville District, and to restrain 'the entering of any order by virtue of said election which would purport in any manner to affect or impair the rights of Common School District No. 2', and to require defendants to continue to recognize plaintiffs as the lawful trustees of School District No. 2.

"The election, the result of which is sought to be annulled, was held in pursuance of the following resolutions of the County Board of Education passed on August 5, 1929:

" 'WHEREAS, the County Board of School· Trustees of Walker County, Texas, has been for some months engaged in the task of grouping the Common School Districts of Walker County for rural high school purposes, and it appearing to the Board that it will be for the best interest of the Common School Districts adjacent to the Huntsville Independent School District, and particularly the districts hereinafter named, and that the pupils of said Common School Districts will have better high school privileges by annexing the territory in said Districts hereinafter set forth to the Huntsville Independent School District;

" 'BE IT THEREFORE RESOLVED by the County Board of School Trustees of Walker County, Texas, that the following School Districts, to-wit, Common School Districts No. Two, Nine, Twelve, and the Phelps Independent School District, should be annexed to the Huntsville Independent School District, as provided by Articles 2922a and 2922c of the Revised Civil Statutes of 1925, as amended by the Acts of the Thirty-Ninth Legislature, Chapter 50, page 204, and by the Acts of the Fortieth Legislature, First Called Session, page 206, Chapter 78; and it further appearing to said County Board of Trustees that said territory, proposed to be annexed to the Huntsville Independent School District, aggregates more than one hundred (100) square miles, but does not contain more than seven (7) Common School Districts; and it further appearing to said Board that, in order to effect said annexation of said

School Districts, it will be necessary for an election to be held through-out the entire territory to be affected by such annexation, and that the County Judge of Walker County is authorized to and is the proper official to issue the Order for such an Election:

" 'IT IS FURTHER RESOLVED that the Hon. P. H. Singletary, County Judge of Walker County, Texas, be and he is hereby requested to order an election, to be held in the entire territory, including the Huntsville Independent School District, Common School Districts No. Two, Nine, Twelve, and the Phelps Independent School District, for the purpose of determining whether the territory embraced within the said Common School District shall be annexed to and made a part of the Huntsville Independent School District, under the laws of the State of Texas, aforesaid.

" 'IT IS FURTHER RESOLVED that a copy of this resolution, signed by the Chairman of the Board and attested by the Secretary, be delivered to the said Hon. P. H. Singletary, County Judge of Walker County, and shall serve as a formal request of this Board for the issuance of said Election Order.'

" 'A copy of these resolutions duly signed and attested was presented to the County Judge, and in compliance with the request therein contained, the following proclamation and order of election was made:

" 'The State of Texas, County of Walker.

" 'WHEREAS, I, P. H. Singletary, County Judge in and for Walker County, Texas, have heretofore received from the County Board of School Trustees of Walker County, Texas, a copy of an order or resolution duly adopted and entered of record by the said County Board of School Trustees of Walker County, Texas, on the 5th day of August, 1929, grouping and undertaking to group Common School Districts Numbered Two, Nine, Twelve, and the Phelps Common School District, with the Huntsville Independent School District, and undertaking to organize a rural high school district by said grouping, and by annexing said Common School Districts to the Huntsville Independent School District; and

" 'WHEREAS, the combined territory of the four Common School Districts sought to be annexed to the said Huntsville Independent School District and the Huntsville Independent School District exceed one hundred (100) square miles, such grouping of said Common School Districts with the Huntsville Independent School District, for the purpose of forming a rural high school district, can not be effected except by an election submitted to the qualified voters residing in said Common School Districts and said Independent School District, and which said order and resolution of the County Board of School Trustees of Walker County requests me to order an election for the purpose of annexing the territory embraced within said Common School Districts to the Huntsville Independent School District, under and by virtue of Articles 2922a and

2922c of Chapter 19a, Title 49, of the Revised Civil Statutes of the State of Texas of 1925, as amended by the Acts of the Thirty-ninth Legislature in 1925, page 304, Chapter 59, and as amended in 1927 by the Fortieth Legislature, First Called Session, page 206, ·Chapter 78; and

" 'WHEREAS, after considering said resolution, requesting such election, and it appearing to me, in my official capacity as County Judge of Walker County, Texas, that it will be for the best interest of the citizens residing in said territory and for the best interest of the patrons of the public schools affected by such election, that such election be granted:

" 'NOW, THEREFORE, I, P. H. Singeltary, in my official capacity as County Judge of Walker County, Texas, do hereby order that an election be held on the 30th day of November, 1929, in the territory embraced by the Huntsville Independent School District, as created and amended by an Act of the Thirty-first Legislature on March 9, 1917, Chapter 45, page 180, Local and Special Laws passed by the Thirty-fifth Legislature at its regular session, and as enlarged by the annexation of Common School Districts Eighteen and Nineteen, by an order and resolution of the County Board of School Trustees of Walker County, Texas, duly made and entered of record as of the first day of June, 1929, to which said Huntsville Independent School District, the territory hereinafter described is proposed to be annexed, and the territory now included in the Huntsville Independent School District, together with that included in the Districts to be annexed thereto, in accordance with this Election Order, and which said election shall also be held in the territory comprising said other School Districts as follows:

" 'Common School District No. Two as set forth and defined on page 91 of the Minutes of the County Board of School Trustees of Walker County, Texas; also in Common School District No. Nine, as defined in Book "H", page 114, of the Minutes of the Commissioners' Court of Walker County, Texas; also in Common School District No. Twelve, as defined in the Minutes of the Commissioners' Court of Walker County, Texas, Book "B", page 295; also in the Phelps Common School District, as created and defined by Special Act of the Legislature, approved March 28, 1917, Chapter 92, page 365, of the Local and Special Laws of the Thirty-fifth Legislature.

" 'That said election shall be held at the regular voting places in the territory affected, as follows:

" 'In Election Precincts No. One and Fourteen at Huntsville, Texas; in Election Precinct No. Eight at Phelps; and in Election Precinct No. Ten at Bath; and the regular election officers heretofore appointed by the Commissioners' Court of Walker County, Texas, are hereby designated as the officers of said Election.

" 'Said election shall be held in accordance with the provisions of the

Election Laws of the State of Texas, and all qualified voters residing in said territory shall be entitled to vote at said Election.

" 'All voters residing in the Huntsville School District and in Common School District No. Two shall vote at Huntsville, Texas; all voters residing in the Phelps Common School District and in Common School District No. Nine shall vote at Phelps; and all voters residing in Common School District No. Twelve shall vote at Bath.

" 'Those in favor of the proposition to annex said territory to the Huntsville Independent School District shall have written or printed on their ballots the following:

" ' "FOR THE ANNEXATION OF THE TERRITORY TO THE HUNTSVILLE INDEPENDENT SCHOOL DISTRICT."

" 'And those opposed to said proposition shall have written or printed on their ballots:

" ' "AGAINST THE ANNEXATION OF TERRITORY TO THE HUNTSVILLE INDEPENDENT SCHOOL DISTRICT."

" 'The returns of said election shall be made to the County Clerk of Walker County, Texas, and shall be canvassed by the Commissioners' Court of Walker County, Texas, and the result thereof declared and entered of record in the Election Records of Walker County, Texas, and the result certified by the County Clerk of Walker County, Texas, and to the Board of Trustees of the Huntsville Independent School District.

" 'The Sheriff of Walker County shall give notice of said election by posting copies of this order in at least one public place in each School District in which said election is ordered for three consecutive weeks before the date of election, and he is further directed to have a copy of said order of election published for three weeks prior to said election in some newspaper of general circulation that has been continuously and regularly published for one year previous to the date of this order, in Walker County, Texas, the date of the first publication being not less than twenty-one (21) days prior to the date of election.

" 'Dated at Huntsville, Texas, this 30th day of October, 1929.

" 'P. H. Singeltary, County Judge,
" 'Walker County, Texas.

" 'ATTEST: S. W. Robinett, County Clerk, Walker County, Texas.'

"This order of election was duly posted and published, as therein directed, by the Sheriff of Walker County, and the election was duly and regularly held and conducted on the day named in the order.

"The returns from the election show that, in the two voting precincts of the Huntsville District in which the voters of that and Common School District No. 2 voted as directed by the order, 242 votes were cast 'for' and 30 'against' annexation. At the other voting placed named in the order the total number of votes 'for annexation' was 21, and 'against annexation' 14.

"It appears from the record that the voting places named in the order are all the regular voting places of the voters in the territory embraced in the order. It is further shown that while the Phelps School District was created an independent district by an act of the legislature passed in 1917, it had not functioned as such for a number of years, but was organized and functioning as a common school district, and was so recognized by the commissioners' court and school authorities of the county.

"Each of the districts involved in the creation of the proposed rural high school district has the scholastic population required by Article 2922a, before cited.

"The questions presented by this appeal are not wholly free from doubt, and because of this fact and of the obvious advantage to the public of having a final decision of these questions as early as possible, we deem it advisable to certify for your decision the questions hereinafter stated which arise upon the foregoing statement of the case, and are properly presented by appellant's brief.

"First: Was the election void under Articles 2922a and 2922c because the trustees of Common School District No. 2 did not consent to the proposed annexation of that district to the Huntsville Independent School District for the purpose of forming, with the other districts named in the order of election, a rural high school district?

"Second: Was the election void because not called by the authority empowered by the statute to make the call?

"Third: Was the published notice of the election for more than twenty-one days prior to the day on which the election was held sufficient?

"After due consideration we have answered the first two questions in the negative and the third in the affirmative, but upon motion for rehearing, for the reasons before stated, we have concluded the questions should be certified for your decision."

For the reasons given by the Court of Civil Appeals in its opinion, with which we are in accord, the first question certified is answered in the negative. The second and third questions we answer in the affirmative.

Appellants contend that the election was held without lawful authority and is void because it was called and the time and place fixed for its holding by the county judge instead of the county board of trustees.

Appellees insist that the county judge was the proper authority to call the election, but if not, then that such election was in effect called by the county board of trustees because the county judge in ordering the election copied the order passed by such board.

An election held at the time and place fixed by law is valid even though no order or call has been issued therefor, as the right to hold such an election is derived from the law and not from any notice. C. J., vol. 20, sec. 79, p. 96.

A failure to give notice of such an election does not render the same nugatory, as every person is required to take notice of what the statute prescribes. People v. Cowles, 13 N. Y., 350; People v. Hartwell, 12 Mich., 508, 86 Am. Dec., 70; Dishon v. Smith, 10 Iowa, 212; State v. Orvis, 20 Wis., 235; Mechem on Public Offices and Officers, sec. 174, R. C L., vol. 9, sec. 13.

But, where the election is a special one, to be called and the time and place fixed by some authority, it is essential to the validity thereof that it be called or ordered by the very authority designated by law and none other. Adsit v. Secretary of State, 84 Mich., 420, 48 N. W., 31; 11 L. R. A., 534; Stephens v. The People, 89 Ill., 337; State v. Langlie, 5 N. D., 594, 67 N. W., 958, 32 L. R. A., 732; Marsden v. Harlocker, 48 Ore., 90, 85 Pac., 328, 120 Am. St. Rep., 786, and note.

The validity of the election in question can only be sustained upon the theory that the county judge has been vested by law with authority to order the same. We are unable to find any provision of law which authorizes the county judge to call the election described in article 2922c, R. S., 1925, and counsel for appellee have not cited us to any statute which attempts to confer such authority. The county judge has been authorized in various statutes to order special elections provided for, but there is no statute conferring general power upon the county judge to order special elections. If such a statute existed it might be inferred that the Legislature in enacting article 2922c intended for the county judge to exercise the power conferred thereby to order the election in question.

Nor is there any provision in the rural high school act, of which article 2922c is a part, expressly conferring authority upon the county board of trustees to order the election provided for in said article, and if such power exists it must be held to be conferred by implication.

The Legislature will be presumed to have known at the time of the passage of the rural high school act that there was no general statute placing the duty upon the county judge or any other officer or tribunal to order the character of election provided for in article 2922c, hence it must have contemplated that this authority was to be exercised by the county board of trustees in whom was expressly vested the power to form rural high school districts by grouping common or independent districts. In certain instances the county trustees are authorized to form such districts without the necessity of submitting the question to a determination of the electorate of the disricts involved. Art. 2922a, R. S., 1925, as amended by Acts 39th Leg. (1925), c. 59, and Acts 40th Leg. (1927), 1st Called Session, c. 78 (Vernon's Ann. Civ. St., art. 2922a). They are also directed to form rural high school districts under the conditions specified in section 2922c, but their authority in this respect is limited to there first being an approval of the majority of the qualified voters of the

proposed district at an election called for such purpose. Under these circumstances we think it may be reasonably and fairly inferred that it was within the contemplation of the law making body that the agency charged with the duty of forming such districts and of their supervision was clothed with power to call the election required, fix the time and place thereof, canvass the result, and thus determine whether the proposed district should be created. This construction is permissible under the rule that a statute should be so construed as to permit in the fullest manner the accomplishment of the apparent policy and object of the Legislature in enacting it.

It is immaterial that there was a full and fair expression of the voters of the proposed district, as there can be no valid election if the same has not been called by lawful authority. The rule on this question is thus stated in Cyc., vol. 15, p. 317: "There can be no valid election without some lawful authority behind it. The right to hold an election cannot exist or be lawfully exercised without express grant of power by the Constitution or Legislature."

If it had been shown that the entire electorate of the district to be affected had unanimously voted in favor of the question submitted in the election, it would not result in a legal annexation of the school districts to the Huntsville independent district, for. if the election was illegally called, the vote therein was without any legal effect whatever. Supervisors of Marshall County v. Cook, 38 Ill., 44, 87 Am. Dec., 282; Stephens v. The People, 89 Ill., 343.

In the last cited case it was held that an election to authorize the issuance of county bonds called by the county court instead of the supervisors of the county as required by law was without authority of law and bonds issued in pursuance thereof were absolutely void.

We are unable to assent to the correctness of the proposition announced by the Court of Civil Appeals in its opinion in this case that because the county judge in ordering the election copied the resolution passed by the county board of trustees in his order the practical result was that the election was ordered by such trustees. The record shows that the trustees by resolution merely petitioned the county judge to order the election. They did not attempt to fix the time nor the place for holding same. It is essential that the time and place for holding a special election must either be fixed by law or appointed by the legally authorized officials. Town of Hendersonville v. Jordan, 150 N. C., 35, 63 S. E., 167; McCrary on Elections, sec. 141; Kenfield v. Irwin, 52 Cal., 164; State v. Young, 4 Iowa, 561; C. J., vol. 20, sec. 87, p. 101.

If the duty of calling the election in question devolved upon the county board of trustees, then that agency and it alone was authorized to fix the time and place for holding such election. It could not delegate the performance of this duty to the county judge of the county.

It also appears that the Legislature has failed to fix the length of time for giving notice of such an election. In the absence of such provision we think the law applies there must be a reasonable time. C. J., vol. 20, sec. 87, p. 101; Kenfield v. Irwin, 52 Cal., 164.

Inasmuch as the Legislature has in a number of statutes calling for elections upon similar questions provided for twenty-one days notice thereof, we think it may be said as a matter of law that the giving of such notice for this length of time would constitute reasonable notice and it is for this reason we answer the third question in the affirmative.

We recommend that the questions certified be answered as indicated herein.

Opinion answering certified questions adopted and ordeerd certified.

C. M. CURETON, Chief Justice.